# Exhibit N

MDOT OCA Emails

**From:** Schafer, Christopher (MDOT)
**Sent:** Friday, October 12, 2018 11:33 AM EDT
**To:** Harr, Dean (MDOT) <HARRD@▇▇▇▇▇▇>; St Onge, Jacqueline (MDOT) <StOngeJ2@▇▇▇▇▇▇>
**Subject:** FW: Michigan DOT - Audit Working Paper Review

---

**From:** Schafer, Christopher (MDOT)
**Sent:** Friday, October 12, 2018 11:13 AM
**To:** Cotter, Jack (MDOT) <CotterJ3@▇▇▇▇▇▇>
**Subject:** RE: Michigan DOT - Audit Working Paper Review

I have considered inquiring of his client as to whether he has asked them for permission to disclose to other parties (non-specifically)

Chris Schafer, CPA, CIA, CFE
Manager, Internal Audit and Vendor Services
Office of Commission Audits
Michigan State Transportation Commission
Michigan Department of Transportation
Phone: 517.373.1500

**From:** Cotter, Jack (MDOT)
**Sent:** Friday, October 12, 2018 10:54 AM
**To:** Schafer, Christopher (MDOT) <SchaferC2@▇▇▇▇▇▇>
**Subject:** Re: Michigan DOT - Audit Working Paper Review

We need to demonstrate/document/acquire evidence to demonstrate that he did not acquire a waiver from his client. Therefore, I recommend, that you ensure that he is in proximity to his working papers in his office. If in proximity, ask him to immediately email or send to you the signed waiver. That is, of course, if this is something that you wish to pursue.

In other words, we might want to tread lightly until we spring spring whatever trap we intend to spring.

Jack Cotter, CPA, CGMA
Commission Auditor
Office of the Commission Audits
Michigan Department of Transportation
Michigan State Transportation Commission
▇▇▇▇▇▇ c
517-373-1500 o

Cotterj3@michigan.gov

Sent from my iPhone

On Oct 12, 2018, at 10:31 AM, Schafer, Christopher (MDOT) <SchaferC2@michigan.gov> wrote:

FYI,

After some research, it is apparent that Mr. Purvine might have violated AICPA ethics rules (1.700.001) and North Carolina administrative code (21 NCAC 08N .0205) in supplying the working papers with confidential client information to ACEC and FHWA.

Also, it appears that Mr. Purvine has not taken the steps required for an out of state CPA to practice in Michigan (basically, registering with LARA), which could mean he is in violation of the Michigan Occupational Code.

Finally, in going through the NC administrative rules, it seems that Mr. Purvine's conduct and work product might violate several of the sections, such as those on due care.

Chris Schafer, CPA, CIA, CFE
Manager, Internal Audit and Vendor Services
Office of Commission Audits
Michigan State Transportation Commission
Michigan Department of Transportation
Phone: 517.373.1500

**From:** Schafer, Christopher (MDOT)
**Sent:** Friday, October 12, 2018 7:31 AM
**To:** Harr, Dean (MDOT) <HARRD@▇▇▇▇▇▇>; Cotter, Jack (MDOT) <CotterJ3@▇▇▇▇▇▇>
**Cc:** St Onge, Jacqueline (MDOT) <StOngeJ2@▇▇▇▇▇▇>; Beebe, Cassi (MDOT) <BeebeC@▇▇▇▇▇▇>
**Subject:** FW: Michigan DOT - Audit Working Paper Review

As cassi adeptly pointed out this morning, was it improper for Dan to share such information about his client with FHWA/ACEC?

Chris Schafer, CPA, CIA, CFE

Manager, Internal Audit and Vendor Services
Office of Commission Audits
Michigan State Transportation Commission
Michigan Department of Transportation
Phone: 517.373.1500

**From:** Dan Purvine <dan@XXXXXXX>
**Sent:** Thursday, October 11, 2018 8:45 AM
**To:** St Onge, Jacqueline (MDOT) <StOngeJ2@XXXXXXX>; Schafer, Christopher (MDOT) <SchaferC2@XXXXXXX>; Beebe, Cassi (MDOT) <BeebeC@XXXXXXX>
**Cc:** 'Parker, Danial (FHWA)' <Danial.Parker@d XXXX>; 'Matt Reiffer' <mreiffer@XXXX>
**Subject:** RE: Michigan DOT - Audit Working Paper Review

Jacqueline,

We formally request a detailed written explanation of your audit findings and the basis you have used to arrive at the findings.  The findings as written below are insufficient to describe the specific items that you consider to be deficient or missing.  We would expect you to provide a list of any workpapers you consider to contain deficiencies, a description of the deficiencies, and a description of any specific items that you consider to be missing from the workpapers.  The auditing standards you have referenced total 137 pages.  Your findings as written are insufficient to describe the basis for your conclusion that the workpapers are deficient in a way that provides us any basis to respond to the findings.

Applying auditing standards involves interpretation and practical application to the engagement based on the specific risks relevant to the client under audit.  Clearly, our interpretation of the auditing standards differs from that of your group.  We will need a written explanation of how you are interpreting the auditing standards relevant to your findings below, to allow us to understand the basis for your findings and to plan any necessary corrective actions.

In relation to the attached workpapers, as an example, the Planning and Risk Assessment Memo describes important information relevant to our audit planning process, and key risks of the engagement.  The Large Dollar Threshold and High Risk Accounts workpaper presents our determination of high risk accounts and the materiality to be applied to each.  The tab labeled Risk Assessment clearly describes our assessment of risk at the account and relevant financial statement assertion level.

As a note, our firm performs a substantial number of indirect cost rate audits nationwide.  A number of our audits have cognizant reviews performed, by North Carolina DOT, Arkansas DOT, and Montana DOT.  No significant issues have been noted in any of those cognizant reviews, in any of the years they have been performed.  So it appears that your group has a different interpretation of the auditing standards, which underscores the need for a clear explanation of the specific items you consider to be deficient.

From an industry standpoint, I think it is important that your group provide A/E firms and CPA firms a clear explanation of your expectations, in sufficient detail for practical application, in order to 1) allow CPA firms to perform these audits successfully, 2) to avoid situations where A/E firms will have their overhead rate rejected, and 3) to work together with the A/E industry and CPA firms to improve audit quality, consistent with the goals of AASHTO, ACEC, and FHWA.

Best regards,
Dan

Daniel L. Purvine, CPA
Owner

<image001.jpg>

(919) 215-7708 | dan@XXXXXXX | www.aeclarity.com


**From:** St Onge, Jacqueline (MDOT) [mailto:StOngeJ2@XXXXXXX]
**Sent:** Tuesday, October 09, 2018 10:12 AM
**To:** Dan Purvine <dan@XXXXXXX>
**Cc:** Schafer, Christopher (MDOT) <SchaferC2@XXXXXXX>; Beebe, Cassi (MDOT) <BeebeC@XXXXXXX>
**Subject:** Michigan DOT - Audit Working Paper Review

Dan,

We have completed our initial review of the audit working papers related to the audit of Advanced Geomatics.

Our preliminary conclusion is that we will not concur with the audit report for Advanced Geomatics, dated July 6, 2018. Based on our initial review, it does not appear that the audit planning and risk assessment steps for the audit adhered to relevant auditing standards. Specifically:

1. We did not find evidence that the audit involved assessment of risk at the relevant assertion level for classes of transactions and account balances, as required by AU-C Sections 315, 800, and 805.

2. We did not find evidence that the nature, timing, and extent of audit procedures were based on and responsive to the

assessed risks of material misstatement at the relevant assertion level as required by AU-C Sections 300, 330, 800 and 805.

Please note that we have not intended the list above to be a comprehensive list of all potential issues with the audit. Given the issues observed with the risk assessment and audit planning, we are not inclined to opine on all aspects of the audits.

While it is our understanding that your firm has provided all the working papers supporting the indirect cost rate audit, we will review any additional evidence that you can provide that demonstrates compliance with the auditing standards discussed above. Please provide any additional working papers that you have by noon on October 11. If you have any questions, please feel free to contact us at 517-373-1500.

Thank you,

Jacqueline St Onge, CPA
Manager, Vendor Services Unit
Office of Commission Audits
Michigan State Transportation Commission
Michigan Department of Transportation
Phone: 517.373.1500

**From:** Beebe, Cassi (MDOT) <BeebeC@███████>
**Sent:** Friday, March 16, 2018 9:29 AM EDT
**To:** St Onge, Jacqueline (MDOT) <StOngeJ2@███████>; Schafer, Christopher (MDOT) <SchaferC2@███████>
**Subject:** snyder
**Attachment(s):** "Snyder.pdf"

I don't know if this will make you guys feel better or worse. So Judy did all of these audits long before she was a CPA, and Zarkowski only has tax experience.

Cassi



**From:** Thompson, Lisa S (MDOT) <ThompsonL@XXXXXXX>
**Sent:** Thursday, October 25, 2018 8:30 AM EDT
**To:** Rademacher, Carol R. (MDOT) <RADEMACHERC@XXXXXXX>
**CC:** Frierson, Myron (MDOT) <FriersonM@XXXXXXX>
**Subject:** Re: Overhead Audit

Carol

I would be glad to meet as soon as we can arrange it. My specific concern is that even without intention equal treatment can have a disparate impact and violate Title VI requirements. If what you're doing disproportionately impacts a segment of the population that also happens to be one of the protected groups then Title VI requires MDOT to give extra scrutiny to our procedures to ensure the impact or processes are unavoidable.

For example you cannot just buy the cheapest pieces of property you can find to build the highway without studying the impacts of that purchase on the community affected. We then must compensate them appropriately and/or design the road to reduce the negative impact.

OCA provides a service and receives federal funds through MDOT for those services. They subject Title VI requirements just as we are.

Lisa S. Thompson, Administrator
Office of Business Development
Michigan Department of Transportation
Office: 517-373-2377
Cell: XXXXXXX  ,=,e

**MDOT Mission**

Providing the highest quality integrated transportation services for economic benefit and improved quality of life.

On Oct 25, 2018, at 7:44 AM, Rademacher, Carol R. (MDOT) <RADEMACHERC@XXXXXXX> wrote:

> Good morning Lisa,
>
> I understand your concerns regarding DBE's, and would like to sit down with you, and perhaps OCA, to understand the complete picture of what's going on.  Understandably, you're just getting a portion of the story.  In actuality, these issues are affecting large firms as well.  Unfortunately, most of the using JES Professional Services (Judy Snyder) are DBE's. **It is Judy's work, not the DBE's that are the cause of the issue.** OCA can speak more concisely on their methodology, findings, and overall issues than I can.  Let me know your thoughts, and we can get together.
>
> <image001.png>
>
> Carol Rademacher
> Division Administrator
> Contract Services Division
> **Tel** (517) 373-4680
>
> ---
>
> **From:** Thompson, Lisa S (MDOT)
> **Sent:** Wednesday, October 24, 2018 4:03 PM
> **To:** Frierson, Myron (MDOT) <FriersonM@XXXXXXX>; Rademacher, Carol R. (MDOT) <RADEMACHERC@XXXXXXX>
> **Subject:** FW: Overhead Audit
>
> Hi Myron and Carol,
>
> I received this email today.   I am really concerned we are targeting DBE's into these meetings disproportionately and that our requests of them may be unreasonable.
> Is her information accurate?  Are we sharing information outside of MDOT that could jeopardize their credibility?  I heard we called GeoTran in for less than $15k?  My manager has spent several hours looking at this stuff.  The cost of the OCA audit time, the cost to the company and the prequal committee members seems to exceed this amount.
> I know SSI and Great Lakes are probably more, but again, have they actually done anything wrong?  If the others fall into the same boat switching accounts costs the company more than the repayment to MDOT.
>
> I just want to be sure you two are aware of the impact this may be having on the small businesses.  She is not the first one who has reached out to me, but she is the first one who put in writing some of the conversations I have had with the others.
>
> Thanks,
> Lisa
>
> <span style="color:red">Email from DBE below:</span>
>
> Hi Lisa!

I want to start by congratulating you on a very successful symposium.  This one was the best DBE mtg I've ever been to.  So thank you for your leadership!  Your influence is really showing and is very appreciated!

Thank you again for taking the time to chat with me on Monday.

I have been struggling with how to put this into words in an organized manner.  So I guess that's my way of apologizing in advance for listing random thoughts...

- The stress, cost (actual) and cost in time this year is completely unacceptable.  I, like many small business owners, work full time in the operations side of the business and then do the business stuff after hours on nights and weekends.  We rely heavily on our paid professions (CPA and Attorney) for the assistance and expertise that we lack.  So simply scheduling ourselves to be in the office for days of audit forces us to not be able to conduct direct work and is a double whammy.
- .
- The lack of communication from MDOT on this issue has been exceptionally difficult because many different departments seem to be aware of the issue, but no one is asking US, the firms that are caught in the middle.  Because of this, I believe there is much false and incomplete information being passes around.  Which is very troubling.  It seems a lot like MDOT OCA is the great and powerful OZ and we are not to know what is going on behind the curtain.
- .
- I find this all especially troubling because there is so much talk behind the scenes between various MDOT divisions and ACEC.  If word gets out that our prequalifications are in jeopardy, we will have no shot at getting future work.  ...And right now is the time when all the Construction Engineering Scopes are coming out.
- .
- I have been told I need to make a business decision to basically not use Judy Snyder, my current overhead accountant, but have not been told any one thing that she has done wrong.  I recall when we were first told that since we had over $500,000 in MDOT revenue we would be required to have an Overhead (OH) Audit conducted annually.  We were provided no guidance of how to find such an individual.   In talking with other small firms I was amazed to learn the only firm in Michigan that was qualified to conduct a FAR OH Audit, was a small firm. I interviewed them, reviewed her training certificate, and interviewed her clients before deciding to hire her.  Imagine my relief when about a year later, I see a picture and article on her in the local newspaper showing that she had received an award from MDOT for "Zero Findings" in her audits.  I felt great, I had found someone local that was also being touted for being the best in her field.  ... Not to mention she is also a small woman owned business!
- .
- Now I am being told she doesn't seem to understand how to conduct an audit.  We have talked with Don Pervine from AE Clarity, the company that conducts the training for FAR Auditors all over the country and Judy's mentor.  He says she is one of his star pupils.  He mentioned that there is both an art and a science to auditing and her experience with small businesses in an asset to her auditing skills.  He led us to believe that the initial concern from MDOT OCA was in regards to how Judy selected items for review (ie her "work papers").  He said there are numerous ways and formats that can be used for documenting these "work papers" and that what Judy had used, was an acceptable format, but he thought OCA wanted things in a different format.  So he worked with Judy to come up with different formats to submit to MDOT (because OCA refused to discuss what they wanted in any detail).   Right now it feels very much like we are being bullied by OCA!
- 
- .
- Much of OCAs perception of Judy's lack of timely response, may very well be due they were asking for information in early to mid April.  ... One of the busiest times for an account...
- .
- I have called around and the next closest firms that conduct FAR Audits are in Indianapolis, Indiana and Worthington, Ohio.  They will not provide a cost range to conduct this audit, other than to say they average approximately $40,000 plus expenses (which is 3+ times what I currently pay).  They do not accept new clients without a face to face interview (in

    which the potential client pays for their expenses for said trip).  This is probably not a big deal to the large consulting firms, but to someone like me, this expense would have a significant impact.
- .
- If OCA is going to conduct follow up audits on our audit, maybe they can save us the money and go back to conducting the audit themselves like they used to.  Perhaps change the dollar value conducted to $2,000,000 or $5,000,000 vs. $500,000.  Once a firm gets into the higher revenue, they can absorb the high audit costs.  Just think about the percentage of the audit cost to revenue. <u>A firm doing $5,000,000 is revenue with an audit cost of $50,000 is 1%, but a $50,000 audit for a company doing $500,000 is 10%.  That percentage difference is in a whole different ball park.</u>
- .
- I am not in business to get rich.  I simply work hard each and every day to support the 15 families I employ.
- .
- I would never intentionally try to cheat MDOT of moneys not due.
- .
- The current conditions are in direct conflict with theme of this year's DBE Symposium as stated by the FHWA DBE Representative..."We want you, we need you, we've got to have you!"

    Thanks again for listening.... Please feel free to contact me if you want to discuss further.